UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-cv-489

| | |
|---|---|
| VANESSA CHAPMAN MURRAY,  )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | **<u>ORDER</u>** |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 10, 13). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.   Administrative History**

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") on April 15, 2019, alleging disability beginning February 18, 2019. (Doc. No. 7-1 at 31). The application was denied initially and upon reconsideration. (<u>Id.</u>).

Plaintiff requested an administrative hearing, which was held on December 7, 2020. (<u>Id.</u>). On January 22, 2021, the administrative law judge ("ALJ") denied the application for benefits. (<u>Id.</u> at 28). The Appeals Council ("AC") subsequently denied review on July 19, 2021, making the ALJ's decision the final decision of the Commissioner. (<u>Id.</u> at 5).

-1-

Having exhausted her administrative remedies, Plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision. The Commissioner has answered Plaintiff's complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.

> If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

#### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The steps are followed in order and if the Commissioner determines that the claimant is or is not disabled at a step of the process, the

evaluation stops at that step. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have an impairment or combination of impairments that is deemed "severe" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)–(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart

-4-

v. Thomas, 540 U.S. 20, 24 (2003). At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 18, 2019, the alleged onset of Plaintiff's disability. (Doc. No. 7-1 at 33). At Step Two, the ALJ found that Plaintiff has the following severe impairments: obesity, lumbar degenerative disc disease, bilateral knee osteoarthritis, anxiety, depression, post-traumatic stress disorder, and schizophrenia. (Id. at 34). At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 35); see 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. The ALJ then determined Plaintiff's RFC, finding that Plaintiff can perform "sedentary work" with certain limitations. (Id. at 37). At Step Four, the ALJ found that Plaintiff is not capable of performing past relevant work as a security guard, a small products assembler, a power tool assembler, or a fire extinguisher inspector. (Id. at 44). At Step Five, the ALJ found that Plaintiff is capable of doing other work in jobs that exist in significant numbers in the national economy, when considering her age, education level, work experience, and RFC. (Id. at 45). Therefore, the ALJ ruled that Plaintiff is not "disabled" within the meaning of the Social Security Act. (Id. at 46).

**V.  Discussion**

For the reasons below, the Court finds that substantial evidence supports the agency's decision, the ALJ applied the correct legal standards in reaching that decision, and Plaintiff has not shown a cognizable constitutional violation warranting relief by this Court.

Plaintiff raises two challenges to the ALJ's decision: (a) the ALJ's finding in Step Five is unsupported by substantial evidence given (1) the ALJ's failure to address an apparent conflict between the vocational witness's testimony and the Dictionary of Occupational Titles ("DOT"), and (2) the obsolescence of the other jobs asserted by the Commissioner; and (b) the former

Commissioner's decision is constitutionally defective because her appointment violated the separation of powers clause. (Doc. No. 11 at 11–12).

As discussed below, these arguments are unavailing. Plaintiff has not shown a cognizable constitutional violation and substantial evidence exists to support the ALJ's decision. Therefore, the Court will affirm the ALJ's decision and deny Plaintiff's motion.

### a. The ALJ's RFC is Supported by Substantial Evidence, Supporting a Denial at Step Five.

Plaintiff's argument here may be dissected into three parts: (1) there is a conflict between the Vocational Expert ("VE") testimony and the DOT that was unresolved by the ALJ; (2) the conflict exists as a result of findings within the Occupational and Medical-Vocational Claims Review Study ("the Study"); and (3) regardless of the conflict, the DOT is outdated and incorrectly reports on jobs that do not exist in significant numbers in the national economy. (Doc. No. 11 at 12–19). In response to a hypothetical question from the ALJ regarding a person of Plaintiff's age, education, work experience, and functional limitations, the VE testified that such person could perform the jobs of addresser, call-out operator, and document preparer. (Doc. No. 14 at 18–19).

First, assuming for the sake of argument that there is a legitimate conflict between the VE testimony and the DOT here, Plaintiff is correct in saying that the ALJ is obligated to resolve those conflicts. SSR 00-4p, 65 Fed. Reg. 75759 (Dec. 4, 2000). However, the fact is that there exists no such conflict here. Not only did the ALJ affirmatively inquire about conflicts in the hearing itself, (Doc. No. 7-1 at 83), but the VE testified truthfully about jobs that do, in fact, exist in the current iteration of the DOT. (Id. at 82). The ALJ formed an opinion about Plaintiff's RFC and accompanying limitations and accordingly, the VE referenced the DOT to find jobs compatible with that RFC and those limitations. The VE simply drew his recommendations from a document that has been affirmed time and again to be a basis on which the Commissioner may form her

decisions about disability claims. See SSR 00-4p, 65 Fed. Reg. 75759 (Dec. 4, 2000). Nothing in the VE's testimony remotely conflicts with the jobs as listed in the DOT.

Second, Plaintiff claims that the Occupational and Medical-Vocational Claims Review Study affirms the conflict between the VE testimony and the DOT. (Doc. No. 11 at 14–15). Plaintiff argues that the Study proves that the jobs of addresser, call-out operator and document preparer were "obsolete" as of the time of the hearing and accordingly, the Study exposes a conflict between the VE testimony and the DOT. (Id. at 13). However, this argument disintegrates upon closer inspection. Plaintiff's argument is actually that the Study exposes a conflict between the VE testimony and the Study, not the DOT. The Study states that these jobs are obsolete and nearly nonexistent, and the VE asserted that they existed in such quantities to justify denying Plaintiff disability benefits. (Doc. No. 7-1 at 81–82). As concluded above, the DOT and the VE testimony are entirely congruent—the only conflict here is between the VE testimony and the Study, which is not a conflict required to be resolved by the ALJ.

The ALJ has no obligation to resolve a potential conflict between the VE testimony and any other source of information Plaintiff chooses. (See Doc. No. 11 at 14). The ALJ must resolve conflicts between the VE testimony and the DOT—in fact, each case cited by Plaintiff to support this claim explicitly states that the ALJ is to resolve conflicts between those two sources of evidence alone, with no provision for any other document or testimony that may be included in that analysis. (See Doc. No. 11 at 15–17). Further, given the fact that the Study is not a publication of which the agency has taken administrative notice as a source of reliable job information (see 20 C.F.R. §§ 404.1566(d)(5), 416.966 (d)(5)), the ALJ here had no obligation to take it into consideration when addressing Plaintiff's claim. As this Court has affirmed, "the information provided by the Occupational and Medical-Vocational Claims Review Study . . . is not a

-7-

Case 3:21-cv-00489-MOC   Document 17   Filed 06/22/22   Page 7 of 10

governmental publication that the ALJ is required to take administrative notice of as a source of reliable job information. . . review here is not de novo and error cannot be assigned where the ALJ followed the regulations." Taylor v. Berryhill, No. 1:17-CV-290, 2018 WL 2418560, at *3 (W.D.N.C. May 29, 2018).

Finally, Plaintiff argues that the DOT is outdated and as a result, it no longer accurately reports jobs that exist in significant numbers in the national economy, as is the standard required by the disability framework. (Doc. No. 14 at 20). Plaintiff goes on to add that fewer than 10,000 addresser jobs exist in the 2020 national economy. (Id.). However, on numerous occasions, when considering the Commissioner's burden to establish a significant number of jobs, the Fourth Circuit has found a number of jobs as low as 110 to be significant for the purpose of disability analysis. See Guiton v. Colvin, 546 Fed. Appx. 137, 142 (4th Cir. 2013) (recognizing that in Hicks v. Califano, 600 F.2d 1048 (4th Cir. 1979), the court found 110 jobs in the claimant's state to be a significant number of jobs); Hodges v. Apfel, 203 F.3d 820 (4th Cir. 2000) ("Hodges asserts that he qualifies for no more than 153 jobs. That number suffices to defeat Hodges's claim for disability benefits."); Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (recognizing that in Hicks, the court found that as few as 110 jobs constitute a significant number); Hyatt v. Apfel, No. 97-2225, 1998 WL 480722, at *3 (4th Cir. Aug. 6, 1998) ("We previously have found that as few as 110 jobs constitute a significant number."); Brittain v. Sullivan, No. 91-1132, 1992 WL 44817, at *4 (4th Cir. Mar. 11, 1992) ("As noted in Hicks v. Califano…110 jobs in the marketplace is a sufficient number of jobs under the statute to be deemed 'substantial'…."). Thus, even if the number is fewer than 10,000, or even removing the addresser job all together, the ALJ's conclusion that there were a significant number of jobs in the national economy that Plaintiff could perform was proper.

In sum, substantial evidence supports the ALJ's step five determination that there were other jobs existing in significant number that Plaintiff could perform.

### b. Plaintiff's Constitutional Argument

Plaintiff argues that SSA's decision denying her disability benefits claim was constitutionally defective and seeks a remand based on this constitutional argument. (Doc. No. 11 at 19). However, Plaintiff lacks standing to litigate this constitutional argument because she has not established compensable harm from the removal restrictions she challenges.[1] See Satterthwaite

---

[1] This Court and many others have repeatedly rejected Social Security plaintiffs' claims that ALJ's decisions are constitutionally defective based on a separation of powers argument. Because this path has now been well-trodden, the Court need not go into detailed discussion for why this claim fails. See, e.g., Juliana Jolean A. v. Kijakazi, No. 5:20-cv-1268, 2022 WL 595361, at *1–5 (N.D.N.Y. Feb. 28, 2022); Jason V. v. Comm'r of Soc. Sec., No. C21-5527-SKV, 2022 WL 575703, at *5–7 (W.D. Wash. Feb. 25, 2022); Colbert v. Comm'r of Soc. Sec., No. 5:20-CV-2234, 2022 WL 556738, at *2 (N.D. Ohio Feb. 24, 2022); Kathy R. v. Kijakazi, No. 2:21-cv-00095-JDL, 2022 WL 42916, at *3–5 (D. Me. Jan. 5, 2022), report and recommendation adopted by 2022 WL 558359 (D. Me. Feb. 24, 2022); Kreibich v. Kijakazi, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022); Taffe v. Kijakazi, No. 20-CV-1974-WVG, 2022 WL 542884, at *9–11 (S.D. Cal. Feb. 22, 2022); Kowalski v. Kijakazi, No. 3:20-CV-01783, 2022 WL 526094, at *9–12 (M.D. Pa. Feb. 22, 2022); Twila D.B. v. Kijakazi, No. 2:20-cv-6304-AFM, 2022 WL 425936, at *2–4 (C.D. Cal. Feb. 10, 2022); Pepper v. Kijakazi, No. 6:20-cv-4159, 2022 WL 391577, at *2–3 (D.S.C. Feb. 9, 2022); High v. Kijakazi, No. 203528, 2022 WL 394750, at *5–6 (E.D. Pa. Feb. 9, 2022); Rhonda W. v. Comm'r of Soc. Sec., No. 2:20-cv-5931, 2022 WL 390802, at *6–8 (S.D. Ohio Feb. 9, 2022); Vickery v. Comm'r of Soc. Sec., No 5:21-cv-122-PRL, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022); Carla D. v. Kijakazi, No. 2:20-cv-361-LRS, 2022 WL 264460, at *1–3 (E.D. Wash. Jan. 27, 2022); Ramos v. Comm'r of Soc. Sec., No 1:20-cv-01606-EPG, 2022 WL 105108, at *2–4 (E.D. Cal. Jan. 11, 2022); Nudelman v. Comm'r of Soc. Sec., No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *10–13 (D. Ariz. Jan 11, 2022); Mor v. Kijakazi, No. 21-1730, 2022 WL 73510, at *3–5 (D.N.J. Jan. 7, 2022); Hutchens v. Kijakazi, No. 1:20CV1124, 2021 WL 5834409, at *6–14 (M.D.N.C. Dec. 9, 2021), report and recommendation adopted by ECF No. 24 (M.D.N.C. Jan. 5, 2022); Olimpiada v. Kijakazi, No. 2:21-cv-00196-CLB, 2022 WL 19678, at *4–5 (D. Nev. Jan. 3, 2022); Benavidez v. Kijakazi, No. 20-990, 2021 WL 6062715, at *4 (D.N.M. Dec. 22, 2021); Wybo v. Kijakazi, No. 20-518, 2021 WL 6052423, at *4 (W.D. Ky. Dec. 21, 2022); Nathaniel H. v. Kijakazi, No. 6:19-cv-01280-AA, 2021 WL 5921377, at *4–6 (D. Or. Dec. 15, 2021); Clark v. Kijakazi, No. 20-cv-1363, 2021 WL 5905942, at *3–4 (E.D. Wis. Dec. 14, 2021); Alice T. v. Kijakazi, No. 8:21CV14, 2021 WL 5302141, at *18–19 (D. Neb. Nov. 15, 2021); Robinson v. Kijakazi, No. 1:20-cv-00358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021). Furthermore, the Court is not aware of any case holding to the contrary, and Plaintiff does not cite any such case.

v. Kijakazi, No. 3:20-cv-724-MOC, 2022 WL 468946 (W.D.N.C. Feb. 15, 2022); Helms v. Comm'r of Soc. Sec., No. 3:20-cv-598-MOC, 2021 WL 5710096 (W.D.N.C. Dec. 1, 2021). As the Supreme Court held in Collins v. Yellen, 141 S. Ct. 1761, 1787–89 (2021), even where an unconstitutional statutory removal restriction exists, a claimant seeking relief on that basis must show that the restrictions actually caused her harm. Plaintiff has not shown—and she cannot show—compensable harm from the any of the removal restrictions she cites, and therefore her request for a remand based on her constitutional claim is without merit.

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 10) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 13) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: June 21, 2022

Max O. Cogburn Jr
United States District Judge